## Hays's Appeal.

H. and P., each obtained and entered of record, a judgment in the Court of Common Pleas of the county of A., against the same defendant; that of H. being the eldest. After the entry of these judgments, the new county of B. was erected out of a part of the county of A.; and the boundary-line between said counties ran through the tract of land on which the said judgments were a lien. The judgment of P. was regularly revived in the county of A., and the lien thereof continued. The judgment of H. was never revived in the county of A.; but before the expiration of five years from the date of its entry in the county of A., it was transferred to the county of B., and there regularly revived; and that part of the tract of land situated in the county of B., under the boundary-line, was sold by virtue of judicial process issued on the judgment of H., in said county: *Held*, that the transfer of the judgment of H. to the county of B., under the act of the 16th of April, 1840, created a new lien from the date of its entry, but did not carry with it the lien of the original judgment, from the time of its entry in the county of A.: *Held also*, that the lien of the judgment of P., which was regularly revived in the county of A., continued to bind that part of the tract of land in the county of B., as it originally attached, and thereby obtained priority, and was entitled to a preference over the judgment of H.

*May* 24. THIS was an appeal by William Hays, from the decree of the Court of Common Pleas of Centre county, in the matter of the distribution of the fund raised by a judicial sale of the real estate of George Carr, by the sheriff. It appeared, from the written statement of facts submitted to the auditor appointed to make distribution of the fund raised as aforesaid, that William Hays, the appellant, obtained a judgment against one George Carr, in the Court of Common Pleas of Centre county, which was regularly entered of record in said court, on the 28th day of August, 1838. Three days after, to wit: on the 1st day of September, 1838, David Petriken also obtained and entered of record in the same court, a judgment against the same defendant. At the time of the entry of these judgments, Carr, the defendant, was the owner of a tract of land situated in Centre county, containing about four hundred and fifty acres, on which said judgments became liens. In 1839, Clinton county was erected, under an act of Assembly, out of a part of Centre county; and the boundary-line between the said counties ran through the tract of land owned and bound as aforesaid. Under the said boundary-line as established, about two hundred and seventy acres of the tract aforesaid became situated in Clinton county. The judgment of Petriken was regularly revived in Centre county, after the erection of the new county of Clinton. The judgment of Hays was never re-

vived in Centre county; but before the expiration of the five years from the date of its entry, it was transferred, under the act of the 16th of April, 1840, to the records of the Court of Common Pleas of Clinton county, where it was regularly revived; and by virtue of judicial process, issued in that county, on said judgment, that part of the tract of land as aforesaid, situated in said county of Clinton, was sold by the sheriff of Centre county. The auditor was of opinion that the judgment of Petriken was entitled to the fund for distribution, in preference to the judgment of Hays, and reported a distribution accordingly. To this report, the following exception was filed:—" The auditor erred in not awarding the money raised by the sale of the real estate of George Carr to the judgment of William Hays; *it being the oldest lien upon the land lying in Clinton county.*" But the court overruled the exception, confirmed the report, and decreed distribution in accordance with it. From this decree, William Hays appealed to this court, and assigned the same for error here.

*J. T. Hale,* for appellant, cited West's Appeal, 5 Watts, 87; Pamph. Laws, 1838–9; Act dividing Centre county; Act of the 16th of April, 1840, authorizing the transfer of judgments, &c.

*Macmanus* and *Petriken,* contrà, cited Act of the 21st of June, 1839, Penn. Laws, 1838–9; Act dividing Centre county; Act 13th June, 1840, Penn. Laws, 692; Act of 16th April, 1840, Penn. Laws, 410; Act of 4th of April, 1843, Penn. Laws, 132; West's Appeal, 5 Watts, 87; King *v.* Cantee, 1 Barr, 147; Penn. Dig. 6th ed. 605.

*May* 29. COULTER, J.—The error assigned is, that the court erred in their decree awarding the money to the judgment of David Petriken. But this court is of opinion that the decree was right.

The land which produced the fund in court was situate in Centre county, when the judgments of Hays and Petriken were obtained. The judgment of Hays, who appeals from the decree, was prior in date, and at the time of the entry of the judgments was entitled to preference. But the county of Clinton was erected, and the line between it and Centre county ran through the land which produced the fund. Petriken's judgment was regularly revived in Centre county, and the lien continued. Hays's judgment was never revived in Centre county; but before the expiration of the five

years it was transferred to Clinton county, and there regularly proceeded on. It is contended, that by the transfer and subsequent proceedings, the lien of the original judgment in Centre was kept up. It must be observed, that the fund was produced by the sale of that part of the land situate in Clinton county, by process issued in that county on Hays's judgment. The transfer of the judgment to Clinton county, under the act of 1840, created a new lien from the date of its entry, and did not carry with it the lien from the time of the entry of the judgment in Centre county; otherwise, judgments obtained in Clinton county *bonâ fide* when no lien existed on the records, would be defeated by a lien subsequently acquired. To give such interpretation to the act of 1840, would be contrary to its manifest intent, and destructive of the just rights of *bonâ fide* creditors. And when extended to other counties, as it must be if adopted in this case, would be productive of most extensive mischief. The lien acquired by the transfer under the act of 1840 must, therefore, date only from the time of its entry on the docket of the county to which it was transferred. Did then the lien of Petriken's judgment, which was regularly revived in Centre county, continue to bind the land in Clinton county on which it originally attached? We think it did. The mere circumstance of the new county line running through the land, did not and could not divest the lien. The *sci. fa.* continued that lien to its original extent. The judgment was properly revived in Centre county, because part of the land was therein situated. The right of lien was a vested right, and it has been the custom to issue process in the old county, in many cases of the erection of new counties: and the sheriff has levied on land bound by the judgment *situate in the* new. As the act erecting Clinton county is silent on the subject, we must not allow well-defined rights to perish by too narrow an adherence to mere technical rules. Where there is a right there must be a remedy.

As, therefore, the judgment of Hays was allowed by the expiration of five years to lose its lien in Centre county, and as the transfer of the judgment to Clinton county only established a lien in that county from the date of the transfer, the judgment of Petriken obtained priority, and was entitled to preference.

Decree affirmed.